(C.D. 2483)

SUNBEAM CORPORATION v. UNITED STATES

United States Customs Court, Second Division

(Decided October 7, 1964)

*Herman T. Van Mell* and *Anton Motz* (*Anton Motz* of counsel) for the plaintiff. *John W. Douglas*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: The above two protests were consolidated for trial. They relate to importations of certain parts of sheep shearing machines which were classified by the collector of customs as manufactured articles, not specially provided for, in chief value of steel, in pargraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and duty was assessed thereon at the rate of 19 per centum ad valorem.

It is the claim of plaintiff that said articles are entitled to free entry as parts of agricultural implements pursuant to the provisions of paragraph 1604 of said act (19 U.S.C. § 1201, par. 1604).

The statutes directly involved read as follows.

Paragraph 397 of the Tariff Act of 1930, as modified, *supra:*

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*     \*     \*     \*     \*     \*     \*

    Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*     \*     \*     \*     \*     \*     \*

        Not wholly or in chief value of tin or tin plate:
           Carriages, drays, \* \* \*:

\*     \*     \*     \*     \*     \*     \*

        Other, composed wholly or in chief value of iron, steel, \* \* \*
                                        19% ad val.

Paragraph 1604 of said act, *supra:*

Agricultural implements: Plows, tooth or disk harrows, headers, harvesters, reapers, agricultural drills and planters, mowers, horserakes, cultivators, thrashing machines, cotton gins, machinery for use in the manufacture of sugar, wagons and carts, cream separators valued at not more than $50 each, and all other agricultural implements of any kind or description, not specially provided for, whether in whole or in parts, including repair parts: *Provided,* That no article specified by name in Subtitle I shall be free of duty under this paragraph.

Statutes indirectly involved are the following:

PAR. 357. Nail, barbers', and animal clippers, pruning and sheepshears, \* \* \* valued at not more than 50 cents per dozen, 3½ cents each and 45 per centum ad valorem; valued at more than 50 cents and not more than $1.75 per dozen, 15 cents each and 45 per centum ad valorem \* \* \*.

PAR. 372. \* \* \* all other machines, finished or unfinished, not specially provided for, \* \* \*: *Provided,* That parts, not specially provided for, wholly or in chief value of metal \* \* \* of any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts: \* \* \*.

Edgar A. Warner, the only witness in the case, testified on behalf of the plaintiff substantially as follows: For the past 17 years he had

been employed as a livestock specialist performing sales promotion work in the Sheep Shearing and Animal Clipping Division, known as the Sunbeam Stewart Department of the plaintiff corporation. That department was engaged in the manufacture and sale of animal clipping and sheep shearing equipment, and the duties of Warner during the past 17 years have been to travel throughout the "48 states" to instruct people how to use the equipment; testing equipment in the field; work with research and development departments, and in the office engage in the equipment sales promotion work. This has been done at farms, county fair grounds, wherever sheep are grown and whenever it is convenient to teach groups of people how to use the equipment.

The witness identified the items in controversy as a fork yoke (left hand), fork yoke retaining spring, oil hole screw, fork yoke (right hand), tension pin retaining spring, and crank case, all of which are parts of a handpiece of a sheep shearing machine. In order to complete a sheep shearing machine, there should be included a jointed shaft, a clutch or a direct connection spindle, some source of power, either electric motor or gasoline engine, plus the necessary combs and cutters.

In explaining how the sheep shearing machine works, the witness stated—

Well, I mentioned the comb and cutter as a part that goes on to the handpiece. The cutter or top knife is the moving part, the bottom one is stationary with teeth in it, and they have a shearing action something like an ordinary pair of scissors, except a combination of them, and the sheep shearing machine as a whole has to deliver a rotary power to oscillating power, and that's done in this various equipment.

Page 11 of plaintiff's exhibit 1 was introduced in evidence to illustrate the various items above referred to. Plaintiff's exhibits 2A through 2F are physical exhibits of the items in dispute. All of these are necessary to the proper functioning of the machine. In other words they are component and integral parts of the handpiece and the handpiece is a component and integral part of the sheep shearing machine without which the machine could not operate. A catalog illustrating the sheep shearing machine and animal equipment was received in evidence as plaintiff's exhibit 3.

Having seen sheep shearing machines used thousands and thousands of times by farmers and ranchers, the witness stated that the machines are used primarily to harvest the wool crop; that they were also used to some extent to shear around the eyes to "what we call correct wool blindness" and to remove wool from various parts of the body as a sanitary measure.

According to the witness, sheep shearing machines are used by farmers and professional sheep shearers "wherever sheep are grown, and there are sheep grown in every state."

From the foregoing description of the character, construction, and uses of the sheep shearing machines, there can be no doubt that they are agricultural implements within the purview of paragraph 1604. *Tower & Sons* v. *United States*, 9 Ct. Cust. Appls. 307, T.D. 38239. In that case, the court held that an ensilage cutter, used in cutting green corn into small pieces to be stored in a corn silo and subsequently to be fed to cattle, was an agricultural implement. In the course of its opinion, the court stated—

That the raising, feeding, and caring for animals such as sheep and cattle fall within the term "agriculture," can not be doubted. In *United States* v. *Irwin & Co.* (7 Ct. Cust. Appls., 360; T.D. 36906) at page 362, this court (Judge De Vries delivering the opinion), said in reference to the previous decision of the court in *United States* v. *Boker & Co.* (6 Ct. Cust. Appls., 243; T.D. 35472) :

The court therein included within the term "agricultural implements" as used in said paragraph 391 all the elements, horticulture, viticulture, arbor culture (or as expressed by the single word arboriculture), and the allied industries and pursuits, which pertain to human and incidental animal subsistence, pointing out that this extends to the substantial requirements, which are food, and possibly man's comfort, raiment.

In the *Irwin* case, cited in the above quotation, merchandise described as "sheep shears, specially designed for shearing sheep" had been classified by the collector within the provision for "Scissors and shears, and blades for the same, finished or unfinished" in paragraph 128 of the Tariff Act of 1913. In its opinion the court stated—

The court may well take judicial notice of that which is known by all men, that the sheep which is raised by the American agriculturist furnishes for man not only food but raiment. The sheep industry is a well-known one allied with and commonly conducted with the other agricultural pursuits. These importations are used in the production of man's raiment. It would seem, therefore, that sheep shears are instruments which may well be included within the term "agricultural implements" as used by Congress in the paragraph quoted [paragraph 391 of the Taraff Act of 1913].

Paragraph 391 in the above quotation did not contain the proviso appearing in paragraph 1604 of the Tariff Act of 1930 "That no article specified by name in Subtitle I shall be free of duty under this paragraph." If sheep shears are agricultural implements as held in the *Irwin* case, *supra*, it logically follows that a sheep shearing machine, not being specified by name in subtitle I, would be classifiable as an agricultural implement. Furthermore, even if the articles under consideration should be considered as parts of the handpiece of a sheep shearing machine, nevertheless, they are in law parts of a sheep shearing machine under the doctrine that a part of a part is a part of the whole. In *Richardson Co.* v. *United States*, 8 Ct. Cust.

Appls. 179, T.D. 37289, it was held that certain carburetors which were integral parts of motors, which in turn were integral parts of farm tractors, were properly classifiable as integral parts of agricultural implements. Note also *United States* v. *American Express Co.*, 29 CCPA 87, C.A.D. 175.

Defendant seems to proceed upon the theory that because sheep shears, which are "specified by name" in paragraph 357, are automatically excluded from paragraph 1604, and there being no provision for parts of sheep shears in paragraph 357, the subject merchandise is relegated to the catchall provisions of paragraph 397. This overlooks the fact that we are not here dealing with parts of sheep shears, articles which are subjected to duty according to the value per dozen in said paragraph 357, but, as indicated earlier in this opinion, we are concerned with articles which the record discloses are parts of what are known and advertised as sheep shearing machines, which are priced in hundreds of dollars.

In passing, we venture the opinion, without deciding, that, even if the imported items were not properly classifiable as parts of agricultural implements, they would seem to fall within the provision for parts of machines in paragraph 372.

Upon the record and for the reasons stated, we find and hold that the subject merchandise consists of parts of agricultural implements which are specifically provided for in paragraph 1604, *supra*, as claimed by plaintiff.

The protests are sustained, and judgment will issue accordingly.